(Pleito No, 189.—Fallado en 22 de Abril de 1902.)

## Cayol contra Balseiro.

Recurso contra sentencia dictada por la Corte de Distrito de Arecibo.

1.—Pago en moneda corriente al vencimiento de una obligación contraída antes de verificarse un canje de moneda. Si en una escritura de 'compra-venta otorgada cuando la plata mejicana era la moneda corriente del país, promete el comprador pagar determinada cantidad "en oro ó plata corriente á su vencimiento con exclusión de todo papel moneda", no está legalmente/obligado á pagar un dollar por peso, sino el valor del peso en dollar, al tipo del cambio establecido, al vencerse la obligación.

2.—Prueba de obligaciones. La prueba de las obligaciones incumbe al que reclama su cumplimiento.

3.—Interpretación de los contratos. Cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas, ni casos diferentes de aquéllos sobre que los interesados se propusieron contratar.

### SENTENCIA.

En la Ciudad de San Juan de Puerto Rico, á veinte y dos de Abril de mil novecientos dos, en los autos del juicio

declarativo de mayor cuantía, promovido por Doña Josefa
Cayol y Juliá y Doña Catalina Juliá y Fábregas, y conti-
nuado después por la primera exclusivamente, contra la
sociedad agrícola, Balseiro y Georgetti, en cobro de intereses
sobre el precio aplazado del contrato de compra-venta de la
hacienda "Plazuela," pendiente ante Nos, á virtud del recurso
de casación por infracción de ley interpuesto por ambas
partes, que comparecieron ante este Tribunal Supremo,
representadas, la demandante, por su Abogado Defensor
Don Rafael López Landrón y los demandados por el suyo
Don Herminio Díaz Navarro.— Resultando: Que en diez
de Enero del año próximo pasado el Abogado Don Rafael
López Landrón, á voz y nombre de las Sras. Doña Josefa
Cayol y Juliá, viuda de Annexy, y de Doña Catalina Juliá
y Fábregas, viuda de Cayol, entabló la demanda origen
de este pleito en juicio ordinario de mayor cuantía ante
el Tribunal del Distrito de Arecibo contra la sociedad
agrícola, Balseiro y Georgetti, del domicilio de Barceloneta,
en la que, haciendo relación de los antecedentes del asunto,
expuso los hechos siguientes:—Que en siete de Junio del
año mil ochocientos noventa y cuatro, las expresadas seño-
ras habían vendido á la sociedad demandada la hacienda
"Plazuela," compuesta de doscientas cuarenta y siete cuerdas,
cincuenta céntimos y setenta varas, equivalentes á noventa
y siete hectáreas, veinte y ocho áreas y noventa y una
centiáreas, radicada en el barrio del pueblo del término
municipal de Barceloneta, en precio y cantidad de treinta y
cuatro mil seiscientos pesos, de los cuales recibieron las
vendedoras en efectivo, seis mil quinientos; cuatro mil pesos
más en un vale á pagar dentro de dos años, con el interés del
ocho por ciento anual, y otros cuatro mil cien pesos que
se reservaron los compradores para pagarlos á su vencimiento
á la Sra. Doña Eugenia Buxedas y Fontanilla, de una
hipoteca que por igual cantidad reportaba á su favor la finca
vendida; y el resto de veinte mil pesos, á pagar en quince
años con el interés del ocho por ciento anual, bajo garantía

hipotecaria sobre los mismos bienes; que preocupadas las partes contratantes, como lo estaba todo el país en aquella época, con motivo del canje que se esperaba de la moneda mejicana, que era la circulante, discutieron ante el abogado Don José Sastraño Belaval, á quien habían encargado de redactar en forma legal las cláusulas del contrato, sobre la clase de moneda en que había de satisfacerse el precio aplazado, y que no estando conforme el apoderado de la Sra. Juliá, Don Jaime Annexy, con la opinión de dicho letrado, que había propuesto para evitar cuestiones en el porvenir, que el precio se pagara en la moneda oficial española, para lo cual se haría desde luego la reducción correspondiente, exigió Annexy, que prefirió correr las eventualidades del canje, y fué aceptado por Balseiro como gestor de Balseiro y Georgetti, que el pago del precio aplazado se haría en la moneda corriente al vencimiento de la obligación, como lo acreditaba la carta suscrita por el abogado Sr. Belaval, que se acompañaba á la demanda ; que en su consecuencia, así se consignó en la escritura, estipulándose en la cláusula 2ª la clase de moneda en que había de hacerse el pago del precio aplazado, en la forma siguiente : —"Y el resto del precio ascendente á veinte mil pesos, moneda corriente á su vencimiento, lo pagará la sociedad compradora en oro ó plata y con exclusión de todo papel moneda, á las Sras. vendedoras mancomunada ó solidariamente, ó á sus sucesores, en el término de quince años, á contar desde la fecha de este otorgamiento, ó sea el día siete de Junio de mil novecientos nueve, satisfaciendo los deudores durante ese plazo, el interés del ocho por ciento anual, pagadero en la expresada moneda, por mensualidades vencidas".—Que decretado el canje de la moneda mejicana por la provincial, en Diciembre de mil ochocientos noventa y cinco, los Sres. Balseiro y Georgetti pretendieron pagar los intereses del precio aplazado, con el descuento del cinco por ciento establecido por el decreto del canje; pero que habiéndose opuesto á ello las señoras vendedoras, invocando

el sentido categórico de la cláusula 2ª del contrato de compra-
venta, y convencidos de su error los compradores, Sres.
Balseiro y Georgetti, fijaron prácticamente, para lo sucesivo,
el sentido y alcance de la citada cláusula, con sus propios
actos, pagando sin más disputas ni reservas de ninguna clase,
los intereses estipulados, en moneda provincial, sin descuento
alguno, tanto sobre los veinte mil pesos del precio aplazado,
cuanto sobre los cuatro mil del vale que habían expedido á
la orden de las señoras vendedoras, á cuenta del precio
convenido, y sobre los otros cuatro mil pesos que se reser-
varon para pagar á la Sra. Buxeda, á la que pagaron no sólo
los intereses, sino que, vencido el crédito hipotecario, se lo
pagaron íntegro y sin descuento alguno, en la moneda pro-
vincial, lo mismo que los cuatro mil pesos del vale, que
habiéndolo endosado las señoras vendedoras al Banco Terri-
torial y Agrícola, si bien á su vencimiento, se lo pagaron los
Sres. Balseiro y Georgetti, con el descuento establecido por
razón del canje, le abonaron la diferencia á las vendedoras
en dos partidas, de cien pesos cada una.  Que establecido
posteriormente, ó sea en treinta de Julio de mil novecientos,
el canje de la moneda provincial por la americana, con un
quebranto de un cuarenta por ciento, salvo pacto en con-
trario, los Sres. Balseiro y Georgetti, que habían venido
pagando los intereses en la moneda provincial, sin el des-
cuento establecido sobre la mejicana, en cumplimiento de la
ley del contrato, habían pretendido volver sobre sus propios
actos, y á pretexto de que al pagar los intereses íntegros, lo
habían hecho por mera complacencia con las señoras vende-
doras que se lo habían suplicado encarecidamente, pero en
concepto de anticipo de las cantidades correspondientes á la
diferencia de moneda, no sólo se habían resistido á continuar
pagando los intereses en la moneda americana á la par, como
lo habían venido haciendo en la provincial, sino que, pre-
tendiendo cobrarles la diferencia que habían pagado en el
valor de los intereses satisfechos, habían practicado una
liquidación de los vencidos, á partir de Enero de mil ocho-

cientos noventa y seis, hasta el treinta y uno de Octubre de
mil novecientos, en la que, descontando la diferencia de
moneda por razón del canje, y cargándosela á las señoras
demandantes, venía á resultar á favor de éstas un saldo por
razón de intereses de cuatro dollars veinte y tres centavos,
que depositaron los Sres. Balseiro y Georgetti en el Juzgado
Municipal de Manatí, á disposición de las señoras vendedoras,
pero que éstas se habían negado á recibir, por considerar
nula y de ningún valor la consignación propuesta; por lo
que, en mérito de todos los antecedentes expuestos, é invo-
cando en apoyo de sus pretensiones los preceptos legales que
estimaron pertinentes á su derecho, concluyó solicitando se
declarara con lugar la demanda, y se condenara á los Sres.
Balseiro y Georgetti al pago de los intereses convenidos por
el precio aplazado, según escritura hipotecaria de siete de
Junio de mil ochocientos noventa y cuatro, sin descuento
alguno, por razón del canje de la moneda provincial, á
partir del primero de Agosto de mil novecientos, en lo suce-
sivo, como ya habían venido pagándolos, sin descuento, des-
pués del canje de la moneda mejicana; condenándolos asi-
mismo al pago de los intereses legales, por la mora y de todas
las costas causadas y que se causaren hasta el efectivo pago, y
declarando nulas y de ningún valor las diligencias del preten-
dido ofrecimiento de pago y consignación intentadas por los
demandados ante el Juzgado Municipal de Manatí, hasta el
mes de Noviembre de mil novecientos.—Resultando : Que
en unión de la demanda acompañó el abogado representante
de las señoras demandantes, una copia autorizada por el No-
tario de Manatí, Don José Félix Lajara, de la escritura
pública otorgada en siete de Junio de mil ochocientos
noventa y cuatro, sobre compra-venta de la hacienda "Pla-
zuela," por la que la señora Doña Josefa Cayol y Juliá, y
Don Jaime Annexy, como apoderado de Doña Catalina
Juliá y Fábregas, vendieron á la sociedad agrícola Balseiro y
Georgetti, la expresada hacienda, con los terrenos, fábricas,
siembras y demás pertenencias que la componían, y otra

fracción más de terreno, sitas en el barrio del "Pueblo," del término municipal de Barceloneta, y una casa de madera de altos y bajos, radicada en el mismo pueblo, todo en precio y cantidad de treinta y cuatro mil seiscientos pesos, moneda corriente, de los cuales las vendedoras confesaron recibidos diez mil quinientos en efectivo y cuatro mil cien pesos que se reservaron los compradores, para pagárselos á Doña Eugenia Buxedas y Fontanilla, por una hipoteca que reportaban á su favor los terrenos vendidos; y el resto del precio, ascendente á veinte mil pesos, moneda corriente, á su vencimiento, lo pagaría la sociedad compradora en oro ó plata, con exclusión de todo papel moneda, á las señoras vendedoras, mancomunada ó solidariamente, ó á sus sucesores, en el término de quince años, á contar desde la fecha del otorgamiento, ó sea el día siete de Junio de mil novecientos uno, satisfaciendo los compradores, durante todo ese plazo, el interés del ocho por ciento anual, pagadero en la expresada moneda, por mensualidades vencidas, quedando hipotecadas las mismas fincas vendidas á la responsabilidad del pago del precio aplazado y sus intereses, y cuya escritura fué inscrita en el Registro de la Propiedad de Arecibo, en trece de Julio de mil ochocientos noventa y cuatro.—Resultando: Que también se acompañó con la demanda una carta dirigida por Don José Sastraño Belaval á Don Jaime Annexy, fechada en Ponce, á catorce de Septiembre de mil novecientos, en la que le manifiesta en contestación á otra del Sr. Annexy, de fecha seis del mismo mes, que recordaba efectivamente que al convenir las bases de su contrato de venta de la hacienda "Plazuela," discutieron el Sr. Annexy y el Sr. Balseiro, acerca de la clase de moneda en que había de satisfacerse el precio aplazado; que para evitar cuestiones en el porvenir, aconsejó á ambos que el precio se pagara en moneda oficial española, para lo cual se haría desde luego la reducción de dicha moneda, con cuya cláusula no estuvo conforme el Sr. Annexy, prefiriendo correr las eventualidades del canje.— Que también recordaba que la expresión del pago del precio

aplazado en moneda corriente al vencimiento de la obliga-
ción, había sido indicada por Annexy, y consignada por
Belaval, al pie de la letra, tal como aquél pretendía después
de aceptada por Balseiro.—Resultando : Que conferido
traslado de la demanda, lo evacuó el abogado Don Her-
minio Díaz Navarro, en representación de la sociedad Bal-
seiro y Georgetti, oponiéndose, y alegando la excepción
dilatoria de falta de personalidad en el actor, por carecer de
las cualidades necesarias para comparecer en juicio, y en su
letrado, por ilegalidad del poder ; porque habiendo muerto
Doña Catalina Juliá y Fábregas, no podía comparecer en
juicio su propia representación el abogado Sr. López Landrón,
y en cuanto al fondo del asunto, que respecto á la clase de
moneda en que al vencerse debían abonarse los réditos
y el capital aplazado, no había existido otro pacto que
el que la escritura expresaba, es decir, que habían de
satisfacerse unos y otros en la moneda corriente á su venci-
miento; que los Sres. Balseiro y Georgetti, venían abo-
nando con puntualidad los ciento treinta y tres pesos, treinta
y tres centavos mejicanos, que por interés mensual deven-
gaba el capital aplazado, y al hacerse en cinco de Diciembre
de mil ochocientos noventa y cinco, el canje de la moneda
mejicana, por la española especial que aquí circuló, no por
lo que se expresa en la demanda, sino accediendo á súplicas
de las señoras demandantes, y en concepto de anticipo, se
habían allanado á seguirles satisfaciendo por el rédito aquel
mismo número de unidades de la nueva moneda ó sean
ciento treinta y tres pesos, treinta y tres centavos, provincia-
les; que en el mismo concepto, ó sea á la par, una vez
hecho el canje, abonaron los Sres. Balseiro y Georgetti los
intereses de la hipoteca constituída á favor de Doña Euge-
nia Buxedas, pero no porque se creyeran obligados á ello,
sino porque siendo el importe de la hipoteca cuatro mil
cien pesos mejicanos, pagaderos en cuatro años á mil pesos
los tres primeros y los mil cien pesos restantes el último año,
convinieron con la Sra. Buxedas en que le abonarían el in-

terés de dicha suma, y hasta el capital, en la moneda pro-
vincial, sin descuento alguno, siempre que ella estuviera
conforme por su parte, en aplazar el cobro del capital al
vencimiento del último año, en lo que estuvo de acuerdo,
recibiendo el total importe de su crédito en Diciembre de
mil ochocientos noventa y nueve y otorgándoles la corres-
pondiente carta de pago ante el Notario de Manatí Don José
Félix Lajara; que en cuanto al vale expedido á favor de las
señoras vendedoras por cuatro mil pesos, á cuenta del precio
de la hacienda, es inexacto lo que se consigna en la deman-
da, pues habiéndolo endosado dichas señoras al Banco Terri-
torial y Agrícola á su vencimiento, ó sea en siete de Junio
de mil ochocientos noventa y seis, lo recogieron Balseiro y
Georgetti, abonando su importe en la moneda provincial
con el descuento correspondiente; que al ocurrir el canje de
esta moneda, habían pretendido las señoras demandantes con-
tinuar cobrando los intereses en moneda americana, á la par,
ó sea sin descuento alguno, á lo que se opusieron decidida-
mente los Sres. Balseiro y Georgetti, consignando en el
Juzgado Municipal de Manatí los setenta y cuatro dollars
cincuenta centavos á que ascendían, con el descuento estable-
cido, los intereses del capital aplazado, correspondientes al
mes de Agosto de mil novecientos, y habiéndose negado á
recibirlos practicaron entonces una liquidación general de lo
que eran en deberles por todos conceptos, resultando de
dicha operación un saldo á favor de las expresadas señoras
de once mil cuatrocientos dollars por capital, y por intereses
vencidos hasta el treinta y uno de Octubre del mismo
año, descontadas las cantidades que habían anticipado,
cuatro dollars veinte y tres centavos, que consignaron en el
mismo Juzgado de Manatí, dejando sin efecto la consignación
anterior, y quedando dicha suma á la disposición de las
señoras demandantes, que se negaron á recibirla; que en el
mismo sentido verificaron el ofrecimiento y consignación de
los intereses correspondientes á los meses de Noviembre y
Diciembre de mil novecientos y Enero de mil novecientos

uno, en la moneda americana, con el descuento establecido por el canje, y habiéndose negado también á recibirlos las señoras demandantes, quedaron dichas sumas depositadas en el Juzgado Municipal; que la cláusula de la escritura de siete de Junio de mil ochocientos noventa y cuatro que se refiere al pago, tal como resulta de la copia auténtica de dicho documento que tenían en su poder los Sres. Balseiro y Georgetti, dice textualmente : " que el resto del precio ascendente á veinte mil pesos moneda corriente, á su vencimiento los pagará la sociedad compradora en oro ó plata, con exclusión de todo papel moneda...... en el término de quince años...... satisfaciendo, durante todo ese plazo, el interés del ocho por ciento anual, pagadero en la expresada moneda, por mensualidades vencidas ;" que en esa cláusula se limitaron las partes á consignar en forma genérica, que el capital adeudado y los intereses se abonarían en moneda de oro ó plata corriente, es decir, circulante en esta Isla el día de los respectivos vencimientos, pero no se especificó la clase de moneda, y por ello, de conformidad con los preceptos legales y especialmente con lo prescrito en la proclama del Presidente de la República, publicada en la *Gaceta Oficial* número 31, correspondiente al cinco de Febrero de mil ochocientos noventa y nueve, y con el párrafo final de la sección 11ª del "Bill Foraker," que textualmente dice : "que todas las deudas pendientes al empezar á regir el mismo, serán pagaderas en la moneda de Puerto Rico en circulación, ó en moneda de los Estados Unidos al tipo del canje," los Sres. Balseiro y Georgetti no están obligados á pagar á la parte actora ni los intereses ni el capital que les adeudan, sino con el descuento consiguiente y no á la par, como ella pretende ; que en la copia de la escritura que presentan las señoras demandantes, la cláusula relativa al pago del precio aplazado aparece escrita así : " el resto del precio, ascendente á veinte mil pesos moneda corriente á su vencimiento, lo pagará la sociedad compradora......"—Es decir, suprime la coma que en la copia de

Balseiro y Georgetti está al lado de la palabra "corriente," añadiendo otra al pie de la palabra "vencimiento," y de ahí deduce que los veinte mil pesos son de los corrientes á su vencimiento; que tal como está escrita dicha cláusula en la copia de la escritura que poseen los demandados, al decir que "el resto del precio ascendente á veinte mil pesos moneda corriente, á su vencimiento, lo pagará la sociedad compradora en oro ó plata......" no puede entenderse en otro sentido sino en el de que la suma indicada de moneda corriente el día del otorgamiento, debe pagarse el día de su vencimiento en moneda del metal determinado allí; y que así debe entenderse de cualquier manera que aparezca escrita dicha cláusula, es evidente, porque si la finca se vendió por treinta y cuatro mil seiscientos pesos, moneda corriente el día del contrato, ó sea la mejicana, deduciéndose de aquélla los catorce mil seiscientos pesos mejicanos también que se declaran recibidos en la escritura con anterioridad, al decirse en la expresada cláusula, "el resto del precio ascendente á viente mil pesos," no pueden ser otros pesos que mejicanos, ni puede entenderse de otro modo sino que la suma de esos mejicanos, que quedó por pagar, se abonaría á su vencimiento en la moneda de oro ó plata que tuviese circulación, pero no entregando igual número de unidades de pesos; y por último, que si el contrato se hizo, según se dice en la demanda, en previsión del canje de la moneda mejicana por la española, claro se está que no se pensó en ningún otro canje y que, aun en el caso de haberse convenido que se abonarían las distintas sumas adeudadas en la moneda corriente á su vencimiento, sin descuento alguno, esto sólo obligaría á pagar á la par en moneda provincial, y hoy, con el descuento consiguiente, en la moneda americana.—É invocando á su vez en apoyo de sus excepciones los preceptos legales que estimó pertinentes á su derecho, concluyó pidiendo se absolviera de la demanda á sus representados, con las costas.—Resultando: Que desistido de la demanda el abogado Don Rafael López

Landrón en cuanto á Doña Catalina Juliá y Fábregas por haber fallecido, dejándola subsistente en lo que se refiere á Doña Josefa Cayol y Juliá, como acreedora solidaria del precio aplazado de la compra-venta y de sus intereses, se abrió el pleito á pruebas, ·y practicadas las propuestas y admitidas á las partes, declaró el Abogado Don José Sastraño Belaval, con vista de la carta que dirigiera á Don Jaime Annexy en catorce de Septiembre de mil novecientos, reconociéndola como escrita de su propio puño y letra, así como la firma que la autoriza, agregando que lo que expresa en ella le constaba por la intervención que había tenido como letrado, al celebrarse el contrato de venta de que en dicha carta hacía referencia; se cotejaron con su original las copias presentadas por las partes, de la escritura de compra-venta de de la hacienda "Plazuela," de siete de Junio de mil ochocientos noventa y cuatro, advirtiéndose, entre otras diferencias de escasa importancia, en la presentada por Doña Josefa Cayol, que en la matriz, el párrafo 2º de la cláusula 2ª dice: "Y el resto del precio ascendente á veinte mil pesos moneda corriente, á su vencimiento, lo pagará la sociedad;" advirtiéndose una coma después de la palabra "corriente" y otra después de la palabra "vencimiento," y en la copia se advierte la coma sólo después de la palabra "vencimiento"; observándose en la de Balseiro y Georgetti la coma después de la palabra "corriente."—Se presentaron y agregaron varios recibos suscritos por Doña Josefa Cayol á favor de Balseiro y Georgetti por intereses pagados, que dicha señora reconoció como auténticos en el acto del juicio oral. Se agregó también la certificación expedida por el Director del Banco Territorial y Agrícola de Puerto Rico, Don Vicente Antonetti, de la que resulta que, endosado por Doña Josefa Cayol á favor de dicho establecimiento de crédito el vale por cuatro mil pesos que le expidieran Balseiro y Georgetti, como garantía de un préstamo que había tomado dicha señora en el Banco, á su vencimiento fué hecho efectivo el referido vale por los deudores Balseiro y Georgetti, en moneda

provincial, con el descuento correspondiente por razón del canje. Declaró también Don Félix Massó, con vista de la carta dirigida por él á dicha sociedad, fechada en Manatí, á treinta de Enero de mil novecientos uno, reconociéndola, y agregando que era cierto su contenido, donde le manifestaba entre otros particulares, que si bien habían pagado Balseiro y Georgetti los cuatro mil cien pesos mejicanos que eran en deber á su esposa Doña Eugenia Buxeda, en moneda provincial á la par, esto fué por haber convenido el declarante y su señora esposa, á instancia de dichos señores, en aplazar el pago de dicho capital al vencimiento del último plazo en que debían hacerlo efectivo. Y Don Rafael Balseiro, como gestor de Balseiro y Georgetti, absolviendo posiciones, que en la entrevista celebrada con el Sr. Belaval, como Registrador de la Propiedad que era entonces de Arecibo, no se trató de otra cosa más que de la cancelación de los antiguos gravámenes que pesaban sobre la hacienda "Plazuela," sin haber tenido ninguna otra intervención en el asunto; que si se le daba á Doña Josefa Cayol la misma cantidad en provincial que antes en moneda mejicana, esto era en concepto de anticipo, por súplicas encarecidas de la Sra. Cayol que necesitaba la cantidad á que ascendía la diferencia de moneda para las atenciones de su familia; y que no era cierto que al endosar á la Sra. Cayol el vale de Villamil y Cª á que se refería dicha señora, lo hiciera, para completar la diferencia, en moneda provincial, de los cuatro mil pesos que había pagado al Banco Territorial y Agrícola, como mejicanos, sino con motivo de otras cuentas particulares que con dicha señora tenía pendientes.—Resultando: Que celebrado el juicio oral, el Tribunal del Distrito de Arecibo dictó sentencia por unanimidad de votos, en treinta de Agosto de mil novecientos uno, por la que declaró sin lugar las excepciones de falta de personalidad en la demandante Doña Josefa Cayol y Juliá y en el letrado representante de la parte actora y sin lugar asimismo la demanda interpuesta por dicha Sra. Cayol contra la sociedad agrícola Balseiro y

Georgetti, absolviéndola de dicha demanda, si bien con la obligación, por su parte, de seguir pagando los intereses de los veinte mil pesos del precio aplazado en moneda provincial ó en moneda de los Estados Unidos al tipo del cambio, ó sean, sesenta centavos moneda acuñada de los Estados Unidos, por peso de cuño puertorriqueño, é ineficaces las consignaciones hechas por Balseiro y Georgetti á los efectos de este litigio, sin especial condenación de costas.—Resultando: Que contra esta sentencia interpusieron ambas partes recurso de casación por infracción de ley, que les fué admitido, y elevados los autos á esta Superioridad, donde comparecieron las partes, y acumulados ambos recursos, se entregaron los autos al Abogado Don Rafael López Landrón, como representante de Doña Josefa Cayol y Juliá, para formalizar el interpuesto por su parte, como lo verificó, citando como preceptos legales que lo autorizaban el artículo 1,687, caso 1º de la Ley de Enjuiciamiento Civil, en consonancia con el 1,684 de la misma ley; la regla 78 de la Orden General número 118, de diez y seis de Agosto de mil ochocientos noventa y nueve, el artículo 1,689 de la propia Ley de Enjuiciamiento Civil, en su caso 1º, y los números 1º y 7º del artículo 1,690 de la misma ley de trámites, ampliada por la Orden General número 118, en su regla 79; y alegando como fundamentos del recurso:—1º Violación de la cláusula 2ª de la escritura de venta de la hacienda "Plazuela," de siete de Junio de mil ochocientos noventa y cuatro y de los artículos, citados en la demanda, 1,091, 1,255, 1,256 y 1,258 del Código Civil, absolutamente concordantes. Porque habiéndose estipulado en esa cláusula el pago del precio aplazado, determinado por veinte mil pesos moneda corriente á su vencimiento, cláusula que tiene fuerza obligatoria entre las partes, de ninguna manera opuesta á las leyes, á la moral, ni al orden público, siendo como es un contrato perfeccionado por el mero consentimiento, sin que pueda quedar su eficacia al arbitrio de la parte obligada; eso no obstante, en la parte dispositiva de la sentencia se releva á

la sociedad Balseiro y Georgetti del cumplimiento de cláu-
sula tan literal y categórica en que se otorga justa compen-
sación á la vendedora por el aplazamiento dilatadísimo del
pago del precio, á conveniencia y oportunidad de Balseiro y
Georgetti, á los cuales no se condena á pagar veinte mil
pesos ó unidades monetarias corrientes después del canje de
la moneda provincial.—Por donde se ve que también se ha
infringido el artículo 1,790 del Código Civil, el cual concede
toda eficacia obligatoria á los contratos aleatorios ó de suerte,
confiados al azar de un acontecimiento incierto ó de tiempo
indeterminado, como es el del canje de la moneda circu-
lante, su número y condiciones.—La contravención de tales
preceptos legales, implica, además, falta de aplicación de
ellos al caso del pleito.—Por otra parte, los términos de la
expresada cláusula del contrato de venta de la hacienda
"Plazuela," son claros y no dejan duda sobre la intención
de los contratantes, leída y entendida gramaticalmente, es
decir, de modo que nada sobra en ella, que no resulte en
ella redundancia ó pleonasmo por razón de palabras ociosas
ó inútiles de que pueda prescindirse sin quebrantamiento
y obscuridad del completo período sintáctico.—De suerte
que leída la cláusula segunda del contrato así: "Y el
resto del precio ascendente á veinte mil pesos corrientes
á su vencimiento, lo pagará la sociedad compradora Bal-
seiro y Georgetti en oro ó plata, con exclusión de todo
papel moneda, á la señora vendedora, mancomunada ó soli-
dariamente, en el término de quince años etc., etc.;" así
leída y entendida la cláusula, nada sobra ni falta en ella
para designar claramente que los veinte mil pesos del precio
aplazado, y por lo tanto sus intereses, deberán satisfacerse á
la par, ó sea, veinte mil pesos corrientes el día de los pagos,
es decir, veinte mil pesos (dollars) después de recogida la
moneda provincial.—Por el contrario, leída viciosamente la
misma cláusula, como pretende la parte demandada, hablaría
de esta manera:—"Y el resto del precio ascendente á veinte
mil pesos moneda corriente, á su vencimiento, lo pagará

la sociedad compradora etc., el día siete de Junio de mil novecientos nueve, ó sea en el término de quince años"; lo que haría redundantes las palabras "á su vencimiento," las cuales serían ociosas por lo mismo que inmediatamente se precisa la fecha del pago; á tal punto, que podría leerse y entenderse de igual manera esa cláusula suprimiendo las dichas palabras "á su vencimiento" sin alterar el sentido á que aspira la parte demandada.—De aquí pues, que la parte dispositiva del fallo recurrido adolezca de la falta de debida aplicación del artículo 1,281, inciso 1º, del Código Civil, por cuanto no se ordena el pago según el sentido claro, gramatical, del contrato; cuyo precepto legal fué oportunamente invocado, así como los anteriores, en el escrito de demanda.—En el supuesto de que así no fuera por estimarse, lo que no parece lógico, que leída y entendida como propone el actor, de la cláusula 2ª del contrato abrígase dudas, incertidumbres y temores; temores, incertidumbres y dudas desaparecen juzgando de la intención de los contratantes especialmente por los actos de ellos, coetáneos y posteriores al contrato, como determina el artículo 1,282 del Código Civil, citado para estos efectos en la demanda.—Que la intención de las partes fué verificar los cobros y los pagos en moneda á la par cualesquiera que fueran las contingencias del canje ó su número y condiciones, lo demuestra el acto coetáneo preliminar de la redacción del contrato encomendado al abogado consultor Don José Sastraño Belaval, quien al efecto asegura que el ánimo contratante fué perder ó ganar recíprocamente, según los cambios de la moneda; lo demuestra el pago durante meses sucesivos, de intereses, y de capital en definitiva, á la par, á favor de la acreedora Doña Eugenia Buxeda, por parte de precio aplazado después de un primer canje; lo demuestra el pago también á la par durante cincuenta y seis meses consecutivos, de los intereses adeudados de Doña Josefa Cayol por precio aplazado; y lo confirma el pago á la misma Sra. Cayol, á la par, de la parte de capital vencido en siete de Julio de mil

ochocientos noventa y seis, ó sea de sus cuatro mil pesos
moneda corriente, de un vale otorgado. De manera que
la Salas entenciadora ha contravenido el referido precepto
1,282, prescindiendo de las consecuencias legales más im-
portantes de tales actos é infringiendo la jurisprudencia
que lo ilustra, de veinte y siete de Junio de mil ocho-
cientos ochenta y siete, veinte y cuatro de Noviembre
del mismo año, primero de Diciembre de mil ochocien-
tos setenta y seis, veinte y seis de Septiembre de mil
ochocientos ochenta y ocho y diez de Marzo de mil ocho-
cientos noventa, puesto que, consagrando ella la antigua
y moderna doctrina de interpretación, aceptada en ese
precepto del Código Civil, se prescinde de los hechos
subsiguientes al contrato, se autoriza á Balseiro y Georgetti
para ir contra sus propios actos de pagos sucesivos á la par,
é implícitamente se niega á tales actos, posteriores, libres,
voluntarios, sucesivos, continuados, repetidísimos, toda la
expresión del consentimiento, así como la virtud de crear,
modificar y aun extinguir, si necesario fuere, los derechos
antiguos dudosos por otros nuevos definidos y absolutos.—
2º Infracción manifiesta del principio de hermenéutica
jurídica, axiomático, recogido por la jurisprudencia española,
según el cual donde la ley no distingue, no es lícito distin-
guir; cuyo apotegma queda infringido en la parte dispositiva
del fallo al establecerse distinto criterio legal para los pagos
según que fueren hechos después de un primer canje ó
después de un segundo canje.—3º Infracción del precepto
1,101 del Código Civil, de cuya debida aplicación se pres-
cinde, porque no se condena, como se ha solicitado, á Balseiro
y Georgetti, en consonancia con el artículo 1,100, al pago de
intereses legales y costas por vía de indemnización de daños
y perjuicios derivados de su contravención á los términos
del contrato.—4º Aplicación indebida, con efecto retroac-
tivo, del "Bill Foraker," al contrato celebrado años anterio-
res, de venta de la hacienda "Plazuela," para imponer el
descuento de moneda por la americana, lo que implicaría

el descuento de la americana por la provincial en lo tocante al pago del precio aplazado.—5º Consiste en haber incurrido la parte dispositiva de la sentencia en los siguientes errores de hecho y de derecho tocantes á lá apreciación de las pruebas practicadas. como voy á indicar, según lo previsto para la procedencia de la casación en el número 7º del artículo 1,690 de la Ley de Enjuiciamiento Civil, ampliado por la regla 79 de la Orden General número 118, á saber:— En cuanto á la escritura de venta de la hacienda "Plazuela", de siete de Junio de mil ochocientos noventa y cuatro, error de hecho y de derecho en la apreciación de esta prueba suponiendo contradicción en el pago del precio aplazado en moneda provincial á la par primeramente, y después en moneda americana á la par, cual si lo convenido fuese sólo moneda corriente provincial á la par, y no moneda corriente á la par cualquiera que ella fuese después de canje indeterminado, como indica la cláusula 2ª del contrato; porque no es contradictorio hacer los pagos siempre á la par después de los canjes en la moneda de curso á la fecha de los vencimientos, sino que antes bien, la contradicción resulta de ordenar el pago, como lo hace la parte dispositiva, á la par, después de un canje y con descuento después de otro.—Error de hecho en la apreciación de la misma cláusula del contrato, en cuanto que supone equivocadamente que se estipuló el pago del precio aplazado, sin más consideraciones que el valor dado á la finca en la fecha del contrato, y no también en atención al valor de la finca en la fecha del pago del precio, como aconseja la equidad; porque es notoria la compensación, que se desconoce, del aumento del valor de la propiedad con el aumento del valor de la moneda y la fijeza y garantía de los cambios y del nuevo sistema de nacionalidad.—Error de hecho al apreciar dicha cláusula segunda contractual, suponiendo que el precio fijado en el contrato fué el de moneda mejicana y no, como dice la cláusula, veinte mil pesos corrientes en la fecha del vencimiento, como lo comprueban los sucesivos pagos á la par en moneda

provincial.—Error de hecho en la apreciación de la misma cláusula 2ª, por suponer la sentencia que no es obligatorio para Balseiro y Georgetti el pago del precio aplazado de veinte mil pesos, moneda americana corriente, que es lo estipulado, y considerar, equivocadamente, precio no convenido el aumento aleatorio del valor de la moneda circulante.—Error de hecho en la apreciación de la misma cláusula 2ª del contrato, porque, si, como supone equivocadamente la sentencia, el precio estipulado fué pesos mejicanos precisamente y no la especie de pesos corrientes á la fecha de los pagos, habría contradicción también en aceptar, según el contrato, los pagos de pesos provinciales á la par que dispone la sentencia.—Error de hecho en la apreciación del valor estipulado á la cosa vendida y por consiguiente del precio convenido, porque ni uno ni otro se convino por moneda determinada, ó mejicana, sino por moneda específica, corriente al vencimiento.—Error de hecho en la apreciación de la cláusula 2ª del contrato, suponiendo perjuicio notable en el pago del precio á la par después del aumento proporcionado del valor de la propiedad; error también por creer que los contratantes virtualmente no la atribuyeron mayor ó menor valor á la hacienda "Plazuela," según el mayor ó menor valor de la moneda circulante durante los quince años del plazo, como si la venta se hubiese hecho de contado; y error, por último, de hecho al apreciar la fuerza obligatoria para Balseiro y Georgetti de la propia cláusula 2ª del contrato, pues si con arreglo á ella pudo la sociedad Balseiro y Georgetti, en mil ochocientos noventa y nueve, después de la invasión americana, de la perspectiva de introducción en la isla de la moneda americana, y después de los primeros cinco años del contrato, anticipar el pago de los veinte mil pesos corrientes para no tener que abonar á la par después de dicho 2º canje, no se comprende como pueda estimarse perjudicial á la sociedad agrícola y contrario á su voluntad y propósito, como equivocadamente supone el considerando 3º, su acto voluntario de aceptar las consecuencias del 2º canje,

renunciando medios de evitarlas ó no queriendo hacerlo.—
Todo lo cual implica infracción de la fuerza probatoria del
documento público, prevenida en los artículos 1,216 y 1,218
del Código Civil.—Error de hecho en la apreciación de la
misma escritura de venta, cuando en el considerando 3? se
·dice que se confesaron recibidos, cláusula 2ª, diez mil
quinientos pesos mejicanos precisamente, en efectivo, y no
diez mil quinientos pesos específicos, ó sea corrientes, como
lo aclaran los recibos otorgados por cuenta de intereses
del vale de cuatro mil pesos, incluídos en esos diez mil
quinientos por moneda corriente que pasó á ser provincial
con mutuo consentimiento de las partes.—Error de hecho al
juzgar el concepto de los pagos de intereses de precio
aplazado, satisfechos por Balseiro y Georgetti, á favor de la
Sra. Cayol, viuda de Annexy, según el contenido de los
recibos que figuran reconocidos como auténticos por las
partes en juicio oral, á folios 261 y siguientes, y de las cartas
reconocidas de folios 70 y siguientes, cual si tales recibos
y cartas indicasen que se habían satisfecho á la acreedora
por condescender á sus súplicas y no por razón de hipoteca
y vale otorgados y debidos según contrato.—Error de hecho
y de derecho al apreciar la prueba resultante· de la carta de
pago otorgada por la acreedora hipotecaria de precio aplazado
de venta de la hacienda "Plazuela," Doña Eugenia Buxeda,
en combinación con la carta de Don Félix Massó, marido de
ella, suponiendo en el considerando 7? que el pago á la par
de esa hipoteca, después de un canje, fué á cambio de la
concesión que á su vez hizo la acreedora de esperar á cobrar
en el último año la totalidad del crédito que debía percibir
por cuartas partes en cuatro años sucesivos; de hecho,
porque la carta de pago de la Sra. Buxeda sólo habla de
moneda corriente, sin las estipulaciones pretendidas por el
testigo Massó; y de derecho, por las siguientes razones:—1?
Porque no se da por probado en toda su fuerza de documento
público el hecho del pago á la par, sin modificaciones de la
escritura hipotecaria y de la forma de su cancelación,

por lo que se infringe el inciso 1º del artículo 1,218 del Código Civil, mientras que, por otra parte, no se concede fuerza de prueba contra los contratantes Balseiro y Georgetti á las exactas declaraciones que en dicha carta de pago tienen consignadas, lo que evidentemente constituye infracción del 2º inciso del mismo artículo.—2º Porque á la carta del referido Massó se le da fuerza de escritura pública inscrita, bastante para probar contra Doña Josefa Cayol, que no la ha suscrito, tergiversándose así la forma y condiciones exactas del pago hecho; cuyo error implica violación del concepto probatorio limitado, establecido en los artículos 1,225 y 1,219 del Código Civil.—3º Infracción de los artículos 1,228 y 1,230, porque en la apreciación de la carta del testigo Massó se reconoce fuerza probatoria contra tercero para acreditar el hecho circunstanciado del pago de hipoteca de la Sra. Buxeda, cual si semejante documento privado en perjuicio de Doña Josefa Cayol, que no ha intervenido en él, pudiera alterar las condiciones de lo pactado, ni el hecho exacto de la cancelación en la escritura de carta de pago, así como en la hipotecaria de Doña Eugenia Buxeda: error de apreciación de prueba contra tercero, que infringe el artículo 144 de la Ley Hipotecaria, juntamente con el número 1º del 1,280 del Código Civil.—4º Error de derecho en la apreciación de la carta y declaración de reconocimiento de Don Félix Massó, porque no siendo admisible su testimonio como prueba testifical para modificar ó alterar el contrato de hipoteca y de carta de pago de la Sra. Buxeda, de cuantía superior á 1,500 pesetas, pues prohibe esta clase de prueba el artículo 1,244 del Código Civil, en relación con el último inciso del 1,280, explicado al final de la base 19ª que precedió á la formación del Código, sin embargo de todo eso el séptimo considerando de la sentencia recurrida, suponiendo modificados los términos de la carta de pago por una novación que no existe, desvirtúa la exactitud del 11º hecho alegado en mi demanda.—5º Error de hecho y de derecho en la apreciación de esta prueba, así como de la resultante de los recibos de

Doña Josefa Cayol, aceptados por Balseiro y Georgetti, y de las cartas dirigidas por esta sociedad agrícola á aquella señora, suponiendo que en dichos documentos, por razón de ciertas circunstancias y consideraciones y con motivo de la pequeña diferencia entre la moneda provincial y la mejicana, se habían hecho los pagos á la par por Balseiro y Georgetti en concepto de precio aplazado, tanto á la Sra. Buxeda como á la Sra. Cayol. Error de hecho y de derecho al apreciar la prueba de certificación del Banco Territorial y Agrícola, considerándola aislada y no en combinación con su necesario complemento, es decir, con la carta reconocida de Balseiro y Georgetti, recibo devuelto á Don Antonio Annexy, hijo de Doña Josefa Cayol, y diligencias certificadas de pretendida consignación y liquidación ante el Juzgado Municipal de Manatí, de cuyos documentos resultan completados á la par los cuatro mil pesos moneda corriente provincial del vale de Doña Josefa Cayol, en virtud de no existir ni alegarse ninguna otra clase de cuentas con Balseiro y Georgetti, ni haberse incluído en la liquidación las dos partidas de cien pesos cada una á que se refiere la postdata de la carta de Balseiro y Georgetti, de fólio 74, el documento recogido de Don Antonio Annexy y la carta de Sucesores de López Villamil y Cª, lo que implica infracción de la fuerza probatoria prevenida por presunciones en el artículo 1,215 del Código Civil, en consonancia con el 1,253, pues existe enlace preciso y directo, matemático, digámoslo así, entre las dos partidas de cien pesos, moneda corriente provincial, y la de tres mil ochocientos pesos de la misma moneda, recogidos por Doña Josefa Cayol, para completar los cuatro mil pesos provinciales, total importe del vale satisfecho á la par por precio aplazado.—Resultando: Que conferido traslado del escrito de interposición del recurso al Abogado Don Herminio Díaz Navarro, como representante de Balseiro y Georgetti, lo evacuó impugnándolo; y celebrada la vista del recurso, con asistencia de los abogados defensores de las partes, cada uno sostuvo sus respectivas conclusiones, manifes-

tando el abogado Don Herminio Díaz Navarro que al devolver los autos como lo había hecho, sin formalizar el recurso que había interpuesto por Balseiro y Georgetti, debía entenderse que desistía de él, como lo ratificaba en aquel acto, con cuya manifestación estuvo conforme el abogado defensor de la otra parte, Don Rafael López Landrón, si bien expresando que el desistimiento debía entenderse desde aquel acto; cuyas manifestaciones dispuso el Presidente del Tribunal se consignaran por el Secretario en el acta de la vista, á los efectos pertinentes.— Visto: Siendo Ponente el Presidente del Tribunal Don José S. Quiñones.—1º Considerando: En cuanto al recurso interpuesto por la representación de Doña Josefa Cayol, que la cuestión que en él se ventila se reduce á determinar si con arreglo á las estipulaciones contenidas en el contrato de compra-venta de la hacienda "Plazuela," otorgado por escritura pública en Manatí, á siete de Junio de mil ochocientos noventa y cuatro,. vienen obligados los compradores Balseiro y Georgetti, á pagar los intereses del precio aplazado desde primero de Agosto de mil novecientos, en moneda americana, á la par, ó con el descuento correspondiente, con arreglo á lo dispuesto en la sección 11ª de la ley votada por el Congreso de los Estados Unidos, en doce de Abril del mismo año, para el gobierno y administración civil de esta Isla.—2º Considerando: Que con arreglo al artículo 1,214 del Código Civil, "la prueba de las obligaciones incumbe al que reclama su cumplimiento";. y que hecha aplicación de este precepto al caso de autos, Doña Josefa Cayol no ha justificado| la acción intentada en su demanda contra Balseiro y Georgetti, pues atendidos los términos en que aparece redactada la cláusula 2ª del contrato de compra-venta de la hacienda " Plazuela," tal como resulta de la escritura matriz, lo que en ella se establece es, que descontados de los treinta y cuatro mil seiscientos pesos, moneda corriente, ó sean mejicanos, en que se ajustó el total precio de la compra-venta, los catorce mil seiscientos pesos de la misma moneda que las vendedoras

confesaron haber recibido, el resto del precio ascendente á veinte mil pesos, "moneda corriente," á su vencimiento, lo pagarían los compradores en moneda de plata ú oro, con exclusión de toda clase de papel, en el término de quince años, á contar desde el día del otorgamiento, ó sea el siete de Junio de mil novecientos nueve, abonando los compradores, mientras tanto, el interés del ocho por ciento anual, pagadero en la misma clase de moneda, por mensualidades vencidas y en el domicilio de las vendedoras; de donde se deduce que los veinte mil pesos restantes del precio deben entenderse de moneda mejicana, que era la corriente á la celebración del contrato, y en la que se ajustó el total precio de la compraventa, y pagaderos en moneda de plata ú oro, circulante á su vencimiento, no precisamente á la par, cualesquiera que fueran los cambios que pudieran operarse en el valor de la moneda, como supone Doña Josefa Cayol, y para lo cual era preciso que así se hubiera estipulado expresamente, sino con arreglo á su valor en relación con la moneda mejicana, como lo establecen los preceptos legales que rigen en la materia, según los cuales el pago de las deudas de dinero debe hacerse en la especie pactada, y no siendo posible entregar la especie de moneda que se hubiere estipulado en la usual y corriente, según el valor legal de la misma, al tiempo de hacerse el pago, en lo que convienen sustancialmente los artículos 1,170 del Código Civil y 312 del Código de Comercio, y ha venido á confirmarlo después la sección 11ª de la Ley Orgánica para el gobierno y administración civil de esta isla, de doce de Abril de mil novecientos, al disponer que todas las deudas pendientes al empezar á regir la expresada ley, serán pagaderas en la moneda de Puerto Rico actualmente en circulación, ó en moneda de los Estados Unidos, al tipo del cambio establecido.—3º Considerando: Que esto no obstante, y aun cuando hubiera de estimarse que los veinte mil pesos del precio aplazado debían entenderse de la moneda corriente á su vencimiento, y pagaderos á la par, lo mismo que los intereses convenidos, todavía no estaría justificada la

acción intentada por Doña Josefa Cayol contra Balseiro y Georgetti; pues inspirada como lo fué aquella cláusula de la escritura, según lo consigna en su demanda la misma parte actora, en la perspectiva del canje que se esperaba de la moneda mejicana y en el propósito de que los veinte mil pesos del precio aplazado, y sus intereses, se pagaran en la moneda que la sustituyera, una vez realizado el canje, sin consideración á la diferencia que pudiera resultar en el valor relativo de una y otra, esa estipulación establecida por las partes para un caso especial y concreto, no puede tener aplicación para otro caso completamente distinto, que las partes no pudieron prever, porque no cabía en los límites de la previsión humana, y, por consiguiente, que no pudo entrar en los cálculos y combinaciones de las partes contratantes, cual lo es el otro canje decretado, cinco años después por el Gobierno americano, á consecuencia del cambio de soberanía ocurrido en esta Isla, y por virtud del cual, la moneda provincial que sustituyó á la mejicana, fué sustituída á su vez por la de los Estados Unidos de América, con un quebranto de un cuarenta por ciento de su valor y á cuyo caso, por lo extraordinario é imprevisto, es de perfecta aplicación el artículo 1,283 del Código Civil, según el cual, "cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas, ni casos diferentes de aquéllos, sobre que los interesados se propusieron contratar."—4º Considerando: Por tanto, que no habiendo probado Doña Josefa Cayol, que á virtud de lo convenido en el contrato de compra-venta de la hacienda "Plazuela," de siete de Junio de mil ochocientos noventa y cuatro, estén obligados Balseiro y Georgetti á pagarle los intereses del precio aplazado de la compra-venta en moneda americana, sin descuento alguno, como lo sostiene en su demanda, es de rigurosa aplicación al caso de autos lo dispuesto en la sección 11ª de la citada Ley Orgánica para el gobierno y administración de esta Isla, y en su consecuencia que al absolver de la citada demanda á Balseiro y Georgetti, el Tribunal del

Distrito de Arecibo no ha infringido ninguna de las leyes ni incurrido en ninguno de los errores de hecho ó de derecho que se citan como fundamentos del recurso.—5º Considerando: En cuanto al interpuesto por la representación de Balseiro y Georgetti, que con arreglo al artículo 1,787 de la Ley de Enjuiciamiento Civil, en cualquier estado del recurso puede desistir de él la parte que lo hubiere interpuesto.—Fallamos: Que debemos declarar y declaramos no haber lugar al recurso de casación por infracción de ley interpuesto por la representación de Doña Josefa Cayol y Juliá contra la expresada sentencia del Tribunal del Distrito de Arecibo, y por desistidos á Balseiro y Georgetti del que á su nombre interpuso el Abogado Don Herminio Díaz Navarro, á su perjuicio, y sin especial condenación de costas de ambos recursos.—Así por esta nuestra sentencia, que se publicará en la *Gaceta Oficial*, lo pronunciamos, mandamos y firmamos.

José S. Quiñones.—José C. Hernández.—José Mª Figueras.—J. H. McLeary.

Publicación.—Leída y publicada fué la anterior sentencia por el Presidente del Tribunal Supremo Don José S. Quiñones, celebrando audiencia pública dicho Tribunal en el día de hoy, de que como Secretario certifico, en Puerto Rico, á veinte y dos de Abril de mil novecientos dos.—Antonio F. Castro, *Secretario*.